IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| DAKOTAH MENAUGH, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>IR LABS DE, LLC,<br><br>Defendant. | DOCKET NO. 4:24-cv-2<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL WARN ACT 29 U.S.C. § 2101, *ET SEQ.* AND FAIR LABOR STANDARDS ACT 29 U.S.C. § 201, *ET SEQ.*** |

**COMES NOW**, Plaintiff, Dakotah Menaugh, and files this Class and Collective Action Complaint against Defendants IR Labs De, LLC, on her own behalf and on behalf of over one hundred other employees, challenging Defendants' violation of the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (the "WARN Act") and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA").

**PARTIES**

1. Plaintiff, Dakotah Menaugh, is an adult resident of Tennessee. Plaintiff worked for IR Labs DE, LLC prior to her termination on September 20, 2023.

2. Plaintiff brings this lawsuit as a Rule 23 class action on behalf of all affected employees who were employed by IR Labs DE, LLC and were terminated on or about September 20, 2023.

3. Plaintiff likewise brings this lawsuit as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and all similarly situated employees who were or are employed by IR Labs DE, LLC.

4. Defendant, IR Labs DE, LLC ("Innovation Refunds") is a Limited Liability Company formed under the laws of the State of Delaware. Innovation Refunds' headquarters or principal place of business is located in the State of Iowa. Innovation Refunds, can be served with process by and through its agent, Cogency Global, Inc., 100 Court Avenue, Suite 201 Des Moines, IA 50309.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1331, 1332 and 1367.

6. This Court has personal jurisdiction over Defendant, Innovation Refunds, because Innovation Refunds is headquartered in this District and conducts substantial business operations in the State of Iowa. Further, this Court may exercise personal jurisdiction over Innovation Refunds because the personnel decisions giving rise to the layoffs that are the subject of this suit were made by Innovation Refunds employees who work at the headquarters in Iowa.

## FACTUAL ALLEGATIONS
*The Early Stages and Growth of Innovation Refunds*

7. Innovation Refunds is a "consulting" firm, headquartered in Des Moines, Iowa, which was created for the purpose of capitalizing on the Employee Retention Credit.

8. Innovation Refunds ran aggressive, nationwide marketing campaigns across multiple media forums to encourage small business owners to apply for the Employee Retention Credit and hire Innovation Refunds to assist them with the process.

9. These marketing campaigns included celebrities such as Ty Burrell.

10. Mr. Burrell's picture was featured on Innovation Refunds' website:



11.     Mr. Burrell is also featured in commercials that were recorded and ran on television nationwide by Innovation Refunds.

12.     Innovation Refunds' marketing campaign was successful.

13.     According to Innovation Refunds' website, the company has processed over 20,000 Employee Retention Credit returns for their customers.

14.     Upon information and belief, Innovation Refunds charged its customers 25% of the total refund that was received by each customer.

15.     Upon information and belief, the average refund received by Innovation Refunds' customers was approximately $250,000.00.

16.     Rob Domenico, Innovation Refunds' former executive vice president of financial partnerships, claims that Innovation Refunds has processed nearly $7 billion worth of claims for their customers.

17.     Twenty-five percent of $7 billion is a lot of money.

18.     Upon information and belief, Innovation Refunds has generated in excess of $1 billion in revenue during the approximate three years it has been processing Employee Retention Credit claims for its customers.

19. While Innovation Refunds was accelerating, the company hosted lavish parties for its employees and its partner accounting and law firms.

20. For example, during one holiday party, Innovation Refunds hired a marching band and interpretation artists and even filled the venue with Innovation Refunds-themed ice sculptures.

*The Logistics of How Innovation Refunds Earned Fees from the Employee Retention Credit*

21. In order to obtain the Employee Retention Credit, business file amended payroll tax forms – called 941-X – for each quarter the business is "eligible."

22. Once this tax return is completed and filed with the Internal Revenue Service, it took upwards of six months between the time of filing and when Innovation Refunds' customers received the refund.

23. As part of its contract with its customers, Innovation Refunds was not paid any fees from the customers until the customers received the refund money from the Treasury.

24. Thus, Innovation Refunds had a significant lag time from when the work it performed was completed and when it was paid for the services it provided.

25. By way of example, if Innovation Refunds ran a commercial on television in January of 2023 and a prospective customer called Innovation Refunds or visited its website in response, that customer would not receive any money until at least six months later.

26. Consequently, Innovation Refunds would not be paid any fees for its work until approximately six months later.

27. From the date of its inception through the majority of 2023, Innovation Refunds grew drastically.

28. Upon information and belief, at its peak, Innovation Refunds employed upwards of one thousand (1000) employees.

29. Innovation Refunds knew that its primary service, marketing to small businesses regarding the Employee Retention Credit, had a short shelf life.

30. Once the time period for businesses across the United States to amend their quarterly payroll tax returns for 2020 and 2021 lapsed, Innovation Refunds would lose the majority of its revenue.

31. Thus, Innovation Refunds employed a very aggressive growth and sales strategy to encourage its employees to process as many applications for the Employee Retention Credit as possible.

32. As one former employee explained Innovation Refunds' approach, "[g]et as many deals through the door and let the IRS decide who was qualified."

33. Innovation Refunds set company-wide sales goals that were very high.

34. To meet these goals, Innovation Refunds pushed its employees to repeatedly call any leads – whether new or old – and convince them to hire Innovation Refunds.

35. As part of this strategy, Innovation Refunds created a bonus system whereby it agreed to provide all of its employees with bonuses so long as the company, as a whole, processed a certain number of Employee Retention Credit returns.

36. For example, Innovation Refunds agreed to pay bonuses of $10,000.00 to every employee once the company submitted Employee Retention Credit returns for 10,000 customers.

37. These bonus payments increased when Innovation Refunds reached a certain amount of refunds processed.

38. The largest bonus promised to employees of Innovation Refunds was a $100,000.00 bonus payment to all employees hired by March 31, 2023, if Innovation Refunds closed 50,000 lifetime deals.

39. Innovation Refunds made two bonus payments to all of its employees for reaching these certain thresholds. The first was for $10,000.00, and the second was for $25,000.00.

## WARN Act Allegations

40. As of September 2023, Innovation Refunds employed upwards of 350 employees.

41. On September 19, 2023, Innovation Refunds notified at least 157 of its employees that they were terminated effective September 20, 2023.

42. All 157 or more employees either worked at, reported to, were assigned work from, or reported to the headquarters in Des Moines, Iowa.

43. All 157 or more employees' "single site of employment" is properly considered to be the headquarters in Des Moines.

44. Plaintiff was one of those 157 or more employees.

45. Plaintiff was assigned work from and reported to the headquarters in Des Moines, Iowa.

46. The only notice Plaintiff was provided of her September 20, 2023, layoff was the September 19, 2023 letter.

47. Plaintiff, and all other employees who laid off within the ninety days prior to September 20, 2023, were not provided with sixty days' worth of advance notice.

48. At all relevant times, Innovation Refunds employed 100 or more employees, exclusive of part-time employees, (i.e., those employees who had worked few than 6 of the 12 months prior to the date notice was required to be given or who had worked fewer than an

average of 20 hours per week during the 90 day period prior to the date notice was required to be given), or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States.

49. Thus, Innovation Refunds is subject to the advance notice requirements as set forth in 29 U.S.C. § 2102.

50. As such, Innovation Refunds' failure to provide the requisite sixty days' worth of notice amounts to a violation of the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "WARN Act").

*FLSA Allegations*

51. Innovation Refunds is a business enterprise that, upon information and belief, generated in excess of $1 billion in revenue during an approximate three-year period.

52. Plaintiff and all other employees of Innovation Refunds frequently worked more than forty (40) hours per week.

53. Innovation Refunds made two bonus payments to all its employees. The first was for $10,000 and paid in approximately October of 2022. The second was for $25,000 and paid in approximately January of 2023.

54. Each employee was entitled to the bonus so long as he or she was hired by a certain date, and the company met the milestone goals set by management at Innovation Refunds.

55. These bonuses were labeled as "milestone" payments on each employee's paystub.

56. These bonuses were promised to employees in order to induce the employees to close more deals and remain employed at Innovation Refunds.

57.     Moreover, these bonuses were used to entice employees to come and work for Innovation Refunds.

58.     From the time the bonus payments were announced through the date the second bonus payment was made, Plaintiff worked overtime hours every week.

59.     Because these bonuses were promised beforehand by Innovation Refunds management, were tied to company specific goals, were used to recruit employees and retain those who worked for Innovation refunds, the bonuses are nondiscretionary.

60.     Innovation Refunds paid Plaintiff and all other employees overtime for their weekly hours worked in addition to forty (40).  However, Innovation Refunds failed to include the employees' nondiscretionary, performance-based pay into its calculation of each employee's "regular rate of pay" – as mandated by 29 U.S.C. § 207(e).

61.     Once the milestone thresholds were met and the bonuses were paid, Innovation Refunds was required to apportion the bonuses over the workweeks of the period that the bonuses were earned.

62.     Innovation Refunds did not apportion the bonuses over the weeks they were earned, and thus, did not provide Plaintiff with the additional overtime compensation she is owed for those weeks the bonus was earned.

63.     By neglecting to include this amount of nondiscretionary, performance-based pay into each employee's "regular rate of pay," Innovation Refunds implemented a continuous and systematic process and procedure which deprived Plaintiff and all other non-exempt, hourly wage employees of the overtime they are due pursuant to 29 U.S.C. § 207.

64.     Innovation Refunds knew that – or acted with reckless disregard as to whether – its refusal or failure to properly compensate Plaintiffs and the Collective Members for their

overtime work would violate the FLSA, and Innovation Refunds was aware of the FLSA's overtime compensation requirements.

## CLASS ACTION ALLEGATIONS

65. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> **Nationwide Class**
>
> All employees of Innovation Refunds who suffered an employment loss within the 90 days before September 20, 2023 and were not provided advance notice.

66. <u>Numerosity – Fed R. Civ. P. 23(a)(1).</u> The Class contains at least 157 individuals, the joinder of which in one action would be impracticable. The exact number or identification of the Class Members is presently unknown. The identity and number of the Class Members is ascertainable and can be determined from the Defendant's records.

67. <u>Predominance of Common Questions - Fed R. Civ. P. 23(b)(3).</u> The questions of law and fact common to the Class predominate over questions affecting only individual Class Members, and include, but are not limited to:

   a. Whether the Class Members were employees of the Defendant;

   b. Whether Defendant gave the requisite 60 days' advanced written notice;

   c. Whether Defendant can avail itself of any affirmative defenses;

   d. Whether the proposed class has enough members for this class action to proceed;

   e. Whether Defendant paid the Class Members 60 days' wages and benefits as required by the WARN Act.

68. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class.

Individual questions, if any, are not prevalent in comparison to the common questions that dominate this action.

69. <u>Typicality – Fed R. Civ. P. 23(a)(3).</u>  Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

70. <u>Adequacy – Fed R. Civ. P. 23(a)(4); 23(g)(1).</u>  Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interest incompatible with the interests of the Class, and have retained counsel competent and experienced in such class action litigation.

71. <u>Superiority – Fed. R. Civ. P. 23(b)(3).</u>  This case is best suited as a class action because individual litigation of each Class Members' claims would be impracticable and unduly burdensome on the courts.  Because of the size of each individual Class Members' claim, no Class Member could afford to seek legal redress for the wrongs identified in the Complaint.  A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## COLLECTIVE ACTION ALLEGATIONS

72. Plaintiff brings this action pursuant to the Fair Labor Standards Act 29 U.S.C. § 201 *et seq.* on her own behalf and as representative of individuals similarly situated who are former employees of Innovation Refunds.

73. Defendant Innovation Refunds subjected all of their hourly, nonexempt employees, including Plaintiff and the Collective Members, to their policy of failing to property calculate and pay the employees' overtime wages.

74. At all relevant times, Plaintiffs and the Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are

and have been subject to Innovation Refunds' decision, policy, plan, and common program, practices, procedures, protocols, routines, and rules of failing to pay Plaintiffs and the Collective Members all overtime wages required by 29 U.S.C. § 207(a).

75. Plaintiffs' claims stated in this Complaint are essentially the same as those of the Collective Members. This action is properly maintained as a collective action because in all pertinent aspects the employment relationship of individuals similarly situated to Plaintiff is identical or substantially similar. Specifically, all non-exempt, hourly wage employees are entitled to have any nondiscretionary bonuses included in their regular rate calculation. Innovation Refunds systematically failed to apportion the bonuses payments made to all hourly, non-exempt employees into their regular rate calculation – thereby depriving them of the overtime compensation they are due.

76. The Collective Members perform or have performed the same or similar work as Plaintiffs.

77. Innovation Refunds' failure to pay overtime compensation required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of Plaintiffs or the Collective Members.

78. Although the exact amount of damages may vary among the Collective Members, the damages for the Collective Members can be easily calculated by a simple formula. The claims of all Collective Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Innovation Refunds that caused harm to all of the Collective Members.

79. Innovation Refunds was aware or should have been aware that federal law prohibited them from not paying their employees all overtime wages as required by the FLSA.

80. Innovation Refunds' unlawful conduct has been widespread, repeated, and consistent.

81. This action is properly brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

82. Upon information and belief, the individuals similarly situated to Plaintiff contains more than one hundred (100) individuals.  The exact number or identification of similarly situated employees is presently unknown.  The identity and number of the employees is ascertainable and can be determined from Innovation Refunds' records.

83. Notice can be provided to the Collective Members by First Class Mail to the last address known to Innovation Refunds, via email at the last known email address known to Innovation Refunds, and by text message to the last known telephone number known to Innovation Refunds.

## COUNT I – VIOLATION OF THE FEDERAL WARN ACT

84. Plaintiff, by this reference, adopts and re-asserts all allegations, averments, and statements of fact contained in the preceding paragraphs of this Complaint.

85. Plaintiff and other affected employees who have worked for Innovation Refunds are entitled to the rights, protections, and benefits provided under the federal WARN Act, 29 U.S.C. § 2101 et. seq.

86. Defendant is subject to the notice and back pay requirements of the federal WARN Act because Innovation Refunds is a business enterprise that employed 100 or more employees, excluding part-time employees, and/or, employed 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of overtime), as defined in the WARN Act. 29 U.S.C. §§ 2101(1)(A) and(B).

87. Plaintiff, and all other similarly situated employees, were not provided any advance notice of their job losses.

88. Defendant engaged in conducting a plant closing but has not provided affected employees with the required notice, in violation of the federal WARN Act.

## COUNT II – VIOLATION OF THE FAIR LABOR STANDARDS ACT

89. Plaintiff, by this reference, adopts and re-asserts all allegations, averments, and statements of fact contained in the preceding paragraphs of this Complaint.

90. By failing to include Plaintiff and all other hourly, nonexempt employees' nondiscretionary, performance-based pay into the calculation of each employee's "regular rate of pay," Innovation Refunds has failed to pay the required overtime compensation as mandated by 29 U.S.C. § 207.

91. Although at this stage, Plaintiff and the Collective Members are unable to state the exact amount owed for all overtime wages that have not been paid, Plaintiffs and the Collective Members believe that such information will become available during the course of discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

92. Innovation Refunds knew that – or acted with reckless disregard as to whether – its refusal or failure to properly compensate Plaintiffs and the Collective Members for their overtime work would violate the FLSA.

93. Innovation Refunds was aware of the FLSA's overtime compensation requirements.

94. As such, Innovation Refunds' conduct constitutes a willful violation of the FLSA.

95. As a result of Innovation Refunds' failure or refusal to pay Plaintiffs and the Collective Members the overtime compensation deserved, Innovation Refunds violated 29 U.S.C. § 207(a). Plaintiffs and the Collective Members are therefore entitled to compensation of the overtime compensation shortfall to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

## JURY DEMAND

96. Plaintiff requests a trial by jury on these claims.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff requests this Court enter the following relief:

a. Declare and find that the Defendants have violated the federal WARN Act, 29 U.S.C. § 2101 *et seq.*;

b. Declare and find that the Defendants have violated the FLSA, 29 U.S.C. § 201 *et seq.*;

c. Certify this case as a class action;

d. Certify this case as a collective action;

e. Award compensatory damages and penalties, in an amount according to proof;

f. Award liquidated damages;

g. Award pre- and post-judgment interest;

h. Award reasonable attorneys' fees, costs, and expenses; and

i. Award any and all additional relief the Court may deem appropriate.

_/s/ Timm W. Reid_

TIMM W. REID AT0006547
REID LAW FIRM, P.L.L.C.
100 Court Avenue, Suite 315
Des Moines, Iowa, 50309
Telephone: (515) 381-9842
Facsimile: (515) 219-8746
Email: timm@treidlawfirm.com

ATTORNEY FOR PLAINTIFF