IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| CHAD LYONS; and CHRISTIAN TAVERAS, individually and on behalf of others similarly situated, | Civil No. 4:24-cv-00002-SHL-SBJ |
| Plaintiffs, | |
| v. | **DEFENDANT SOURCETEK, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT** |
| IR LABS DE, LLC; and SOURCETEK, INC., | |
| Defendants. | |

Defendant SourceTek, Inc ("SourceTek") submits its Answer and Affirmative Defenses to the Amended Class and Collective Action Complaint (Dkt No. 7) and states as follows:

**PARTIES**

1.     Plaintiff, Chad Lyons ("Lyons"), is an adult resident of Iowa. Plaintiff worked for IR Labs DE, LLC prior to his termination on or about September 20, 2023.

**ANSWER:**  SourceTek denies the allegations of Paragraph 1 for lack of information.

2.     Plaintiff, Christian Taveras ("Taveras"), is an adult resident of Florida. Plaintiff worked for SourceTek, Inc. and on behalf of IR Labs De, LLC prior to his termination on or about September 20, 2023.

**ANSWER:**   SourceTek admits it hired Taveras to fill a consulting position as a Refund Specialist.  SourceTek denies remaining allegations of Paragraph 2.

1

3.      Plaintiffs bring this lawsuit as a Rule 23 class action on behalf of all affected employees who were employed by IR Labs DE, LLC and SourceTek, Inc. (collectively "the Defendants") and were terminated on or about September 20, 2023.

**ANSWER:**   The allegations contained in Paragraph 3 are legal conclusions to which no response is required.  To the extent a response is required, SourceTek denies the allegations contained in Paragraph 3.

4.      Plaintiffs likewise bring this lawsuit as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all similarly situated employees who were or are employed by the Defendants.

**ANSWER:**   The allegations contained in Paragraph 4 are legal conclusions to which no response is required.  To the extent a response is required, SourceTek denies the allegations contained in Paragraph 4.

**5.**      Defendant, IR Labs DE, LLC ("Innovation Refunds") is a Limited Liability Company formed under the laws of the State of Delaware. Innovation Refunds' headquarters or principal place of business is located in the State of Iowa. Innovation Refunds can be served with process by and through its agent, Cogency Global, Inc., 100 Court Avenue, Suite 201 Des Moines, IA 50309.

**ANSWER:**   SourceTek denies the allegations of Paragraph 5 for lack of information.

**6.**      Defendant SourceTek, Inc., ("SourceTek") is a Corporation formed in the State of Florida. SourceTek can be served with process by and through its agent, Spiegel & Utrera, P.A., 1840 Southwest 22nd Street 4th Floor, Miami, Florida 33145.

**ANSWER:**   SourceTek admits the allegations of Paragraph 6.

### JURISDICTION AND VENUE

7.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1331, 1332 and 1367.

**ANSWER:**   The allegations contained in Paragraph 7 are legal conclusions to which no response is required.  To the extent a response is required, SourceTek denies the allegations contained in Paragraph 7.

8.      This Court has personal jurisdiction over Defendant, Innovation Refunds, because Innovation Refunds is headquartered in this District and conducts substantial business operations in the State of Iowa. Further, this Court may exercise personal jurisdiction over Innovation Refunds because the personnel decisions giving rise to the layoffs that are the subject of this suit were made by Innovation Refunds employees who work at the headquarters in Iowa.

**ANSWER:**   SourceTek admits that IR Labs has an office in West Des Moines, Iowa and that IR Labs conducts business in Iowa.  SourceTek denies the remaining allegations of Paragraph 8 for lack of information.

9.      This Court has personal jurisdiction over SourceTek because SourceTek conducts substantial business operations in the State of Iowa. Further, this Court may exercise personal jurisdiction over SourceTek because the personnel decisions giving rise to this suit affected SourceTek employees who worked in Iowa. Moreover, this Court may exercise personal jurisdiction over SourceTek because it employed individuals who worked in Iowa, and SourceTek, entered into a contract to lease its workforce to Innovation Refunds – which was to be performed at least in part in Iowa.

**ANSWER:**   The allegations contained in Paragraph 9 are legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations contained in Paragraph 9.

## FACTUAL ALLEGATIONS

### *The Early Stages and Growth of Innovation Refunds*

10.      Innovation Refunds is a "consulting" firm, headquartered in Des Moines, Iowa, which was created for the purpose of capitalizing on the Employee Retention Credit.

**ANSWER:** SourceTek's admits Innovation Refunds operates in Des Moines, Iowa and Innovation Refunds' business involved the Employee Retention Credit. SourceTek denies the remaining allegations of Paragraph 10 for lack of information.

11.     Innovation Refunds ran aggressive, nationwide marketing campaigns across multiple media forums to encourage small business owners to apply for the Employee Retention Credit and hire Innovation Refunds to assist them with the process.

**ANSWER:** SourceTek denies the allegations of Paragraph 11 for lack of information.

12.     These marketing campaigns included celebrities such as Ty Burrell.

**ANSWER:** SourceTek denies the allegations of Paragraph 12 for lack of information.

13.     Mr. Burrell's picture was featured on Innovation Refunds' website:

**ANSWER:** SourceTek denies the allegations of Paragraph 13 for lack of information.

14.     Mr. Burrell is also featured in commercials that were recorded and ran on television nationwide by Innovation Refunds.

**ANSWER:** SourceTek denies the allegations of Paragraph 14 for lack of information.

15.     Innovation Refunds' marketing campaign was successful.

**ANSWER:** SourceTek denies the allegations of Paragraph 15 for lack of information.

16.     According to Innovation Refunds' website, the company has processed over 20,000 Employee Retention Credit returns for their customers.

**ANSWER:** SourceTek denies the allegations of Paragraph 16 for lack of information.

17.     Upon information and belief, Innovation Refunds charged its customers 25% of the total refund that was received by each customer.

**ANSWER:** SourceTek denies the allegations of Paragraph 17 for lack of information.

18.     Upon information and belief, the average refund received by Innovation Refunds' customers was approximately $250,000.00.

**ANSWER:** SourceTek denies the allegations of Paragraph 18 for lack of information.

19.     Rob Domenico, Innovation Refunds' former executive vice president of financial partnerships, claims that Innovation Refunds has processed nearly $7 billion worth of claims for their customers.

**ANSWER:** SourceTek denies the allegations of Paragraph 19 for lack of information.

20.     Twenty-five percent of $7 billion is a lot of money.

**ANSWER:** SourceTek denies the allegations of Paragraph 20 for lack of information.

21.     Upon information and belief, Innovation Refunds has generated in excess of $1 billion in revenue during the approximate three years it has been processing Employee Retention Credit claims for its customers.

**ANSWER:** SourceTek denies the allegations of Paragraph 20 for lack of information.

22.     While Innovation Refunds was accelerating, the company hosted lavish parties for its employees and its partner accounting and law firms.

**ANSWER:** SourceTek denies the allegations of Paragraph 22 for lack of information.

23.     For example, during one holiday party, Innovation Refunds hired a marching band and interpretation artists and even filled the venue with Innovation Refunds-themed ice sculptures.

**ANSWER:** SourceTek denies the allegations of Paragraph 23 for lack of information.

*The Logistics of How Innovation Refunds Earned Fees from the Employee Retention Credit*

24.     In order to obtain the Employee Retention Credit, business file amended payroll tax forms – called 941-X – for each quarter the business is "eligible."

**ANSWER:** SourceTek denies the allegations of Paragraph 24 for lack of information.

25.     Once this tax return is completed and filed with the Internal Revenue Service, it took upwards of six months between the time of filing and when Innovation Refunds' customers received the refund.

**ANSWER:** SourceTek denies the allegations of Paragraph 25 for lack of information.

26.     As part of its contract with its customers, Innovation Refunds was not paid any fees from the customers until the customers received the refund money from the Treasury.

**ANSWER:**  SourceTek denies the allegations of Paragraph 26 for lack of information.

27.     Thus, Innovation Refunds had a significant lag time from when the work it performed was completed and when it was paid for the services it provided.

**ANSWER:**  SourceTek denies the allegations of Paragraph 27 for lack of information.

28.     By way of example, if Innovation Refunds ran a commercial on television in January of 2023 and a prospective customer called Innovation Refunds or visited its website in response, that customer would not receive any money until at least six months later.

**ANSWER:**  SourceTek denies the allegations of Paragraph 28 for lack of information.

29.     Consequently, Innovation Refunds would not be paid any fees for its work until approximately six months later.

**ANSWER:**  SourceTek denies the allegations of Paragraph 29 for lack of information.

30.     From the date of its inception through the majority of 2023, Innovation Refunds grew drastically.

**ANSWER:**  SourceTek denies the allegations of Paragraph 30 for lack of information.

31.     Upon information and belief, at its peak, Innovation Refunds employed upwards of one thousand (1000) employees.

**ANSWER:**  SourceTek denies the allegations of Paragraph 31 for lack of information.

32.     Innovation Refunds knew that its primary service, marketing to small businesses regarding the Employee Retention Credit, had a short shelf life.

**ANSWER:**  SourceTek denies the allegations of Paragraph 32 for lack of information.

33.     Once the time period for businesses across the United States to amend their quarterly payroll tax returns for 2020 and 2021 lapsed, Innovation Refunds would lose the majority of its revenue.

**ANSWER:**  SourceTek denies the allegations of Paragraph 33 for lack of information.

34.    Thus, Innovation Refunds employed a very aggressive growth and sales strategy to encourage its employees to process as many applications for the Employee Retention Credit as possible.

**ANSWER:**  SourceTek denies the allegations of Paragraph 41 for lack of information.

35.    As one former employee explained Innovation Refunds' approach, "[g]et as many deals through the door and let the IRS decide who was qualified."

**ANSWER:**  SourceTek denies the allegations of Paragraph 35 for lack of information.

36.    Innovation Refunds set company-wide sales goals that were very high.

**ANSWER:**  SourceTek denies the allegations of Paragraph 36 for lack of information.

37.    To meet these goals, Innovation Refunds pushed its employees to repeatedly call any leads – whether new or old – and convince them to hire Innovation Refunds.

**ANSWER:**  SourceTek denies the allegations of Paragraph 37 for lack of information.

38.    As part of this strategy, Innovation Refunds created a bonus system whereby it agreed to provide all of its employees with bonuses so long as the company, as a whole, processed a certain number of Employee Retention Credit returns.

**ANSWER:**  SourceTek denies the allegations of Paragraph 38 for lack of information.

39.    For example, Innovation Refunds agreed to pay bonuses of $10,000.00 to every employee once the company submitted Employee Retention Credit returns for 10,000 customers.

**ANSWER:**  SourceTek denies the allegations of Paragraph 39 for lack of information.

40.    These bonus payments increased when Innovation Refunds reached a certain amount of refunds processed.

**ANSWER:**  SourceTek denies the allegations of Paragraph 40 for lack of information.

41.     The largest bonus promised to employees of Innovation Refunds was a $100,000.00 bonus payment to all employees hired by March 31, 2023, if Innovation Refunds closed 50,000 lifetime deals.

**ANSWER:**  SourceTek denies the allegations of Paragraph 41 for lack of information.

42.     Innovation Refunds made two bonus payments to all of its employees for reaching these certain thresholds. The first was for $10,000.00, and the second was for $25,000.00.

**ANSWER:**  SourceTek denies the allegations of Paragraph 42 for lack of information.

*The Use of Staffing Agencies*

43.     Sometime around the end of 2022 and beginning of 2023, Innovation Refunds decided to ramp up its marketing efforts in hopes of generating thousands, or tens of thousands, of new leads and ultimately clients.

**ANSWER:**  SourceTek denies the allegations of Paragraph 43 for lack of information.

44.     As part of this plan, Innovation Refunds knew that it would need to significantly expand its sales and processing teams.

**ANSWER:**  SourceTek denies the allegations of Paragraph 44 for lack of information.

45.     Rather than offering direct employment to the needed additional employees, Innovation Refunds decided to partner with staffing agencies – namely: Recruitful, and SourceTek (collectively the "Staffing Agencies").

**ANSWER:**  SourceTek admits that Innovation Refunds partnered with staffing agencies, but SourceTek lacks sufficient knowledge as to the various staffing agencies working with Innovation Refunds.  SourceTek admits it had a contract with Innovation Refunds. SourceTek denies the remaining allegations in Paragraph 45 for lack of information.

46.     Upon information and belief, the employment structure involved Innovation Refunds paying an hourly rate for all "account executives," "client success champions," "processing specialists," and others to the Staffing Agencies.

**ANSWER:** SourceTek denies the allegations of Paragraph 46 for lack of information as those allegations relate to any other staffing agency.  With respect to SourceTek's contract with Innovation Refunds, that document speaks for itself.  SourceTek admits there was a structure in which Innovations Refunds paid an hourly rate.  SourceTek denies the remaining allegations in Paragraph 46.

47.     The Staffing Agencies would pay "account executives," "client success champions," "processing specialists," and others they directly employed at a rate less than the amount paid by Innovation Refunds.

**ANSWER:** SourceTek denies the allegations of Paragraph 47.  SourceTek states that compensation paid to individuals was done in accordance with the Innovation Refunds' contract and related terms.

48.     The difference between the rate Innovation Refunds paid the Staffing Agencies and the rate the Staffing Agencies paid the employees they directly employed was the profit margin the Staffing Agencies generated through this partnership.

**ANSWER:** SourceTek denies the allegations of Paragraph 48 for lack of information as those allegations relate to any other staffing agency.  With respect to SourceTek's contract with Innovation Refunds, SourceTek admits there was a compensation or payment structure in place to compensate SourceTek.

*WARN Act Allegations – Innovation Refunds*

49.     As of September 2023, Innovation Refunds employed upwards of 350 employees.

**ANSWER:** SourceTek denies the allegations of Paragraph 49 for lack of information.

50.     On September 19, 2023, Innovation Refunds notified at least 157 of its employees that they were terminated effective September 20, 2023.

**ANSWER:** SourceTek denies the allegations of Paragraph 50 for lack of information.

51.     All 157 or more employees either worked at, reported to, were assigned work from, or reported to the headquarters in Des Moines, Iowa.

9

**ANSWER:**  SourceTek denies the allegations of Paragraph 51 for lack of information.

52.     All 157 or more employees' "single site of employment" is properly considered to be the headquarters in Des Moines.

**ANSWER:**  SourceTek denies the allegations of Paragraph 50 for lack of information.

53.     Plaintiff, Lyons, was one of those 157 or more employees.

**ANSWER:**  SourceTek denies the allegations of Paragraph 53 for lack of information.

54.     Plaintiff, Lyons, was assigned work from and reported to the headquarters in Des Moines, Iowa.

**ANSWER:**  SourceTek denies the allegations of Paragraph 54 for lack of information.

55.     The only notice Plaintiffs were provided of their September 20, 2023, layoff was the September 19, 2023 letter.

**ANSWER:**  SourceTek denies the allegations of Paragraph 55 for lack of information.

56.     Plaintiff, and all other employees who were laid off within the ninety days prior to September 20, 2023, were not provided with sixty days' worth of advance notice.

**ANSWER:**  SourceTek denies the allegations of Paragraph 56 for lack of information.

57.     At all relevant times, Innovation Refunds employed 100 or more employees, exclusive of part-time employees, (i.e., those employees who had worked few than 6 of the 12 months prior to the date notice was required to be given or who had worked fewer than an average of 20 hours per week during the 90 day period prior to the date notice was required to be given), or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States.

**ANSWER:**  SourceTek denies the allegations of Paragraph 57 for lack of information.

58.     Thus, Innovation Refunds is subject to the advance notice requirements as set forth in 29 U.S.C. § 2102.

**ANSWER:**  The allegations contained in Paragraph 58 contain legal conclusions to which no response is required.  To the extent a response is required, SourceTek denies for lack of information the allegations of Paragraph 58.

59.    As such, Innovation Refunds' failure to provide the requisite sixty days' worth of notice amounts to a violation of the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "WARN Act").

**ANSWER:**  The allegations contained in Paragraph 59 contain legal conclusions to which no response is required.  To the extent a response is required, SourceTek denies the allegations of Paragraph 59 for lack of information.

*WARN Act Allegations – SourceTek*

60.    As of September 2023, SourceTek employed upwards of 300 employees that it "leased" to Innovation Refunds.

**ANSWER:** SourceTek denies the allegations of Paragraph 60.

61.    These employees included "account executives" and "customer success champions" or "processing specialists," among others.

**ANSWER:**  SourceTek admits that individuals contracted through SourceTek to work for Innovation Refunds included "account executives" and "customer success champions."   SourceTek denies the remaining allegations, as phrased, contained in Paragraph 61.

62.    These employees, including Taveras, were on payroll with SourceTek.

**ANSWER:**   SourceTek admits that Taveras was compensated. SourceTek denies the remaining allegations contained in Paragraph 62.

63.    However, these employees were "leased" to Innovation Refunds to work as an integral portion of Innovation Refunds' sales and processing teams.

**ANSWER:** SourceTek is without knowledge or information sufficient to form a belief as to the allegations of Paragraph 63. The allegations of Paragraph 63 are therefore denied.

64.     There were approximately 300 individuals employed by SourceTek and leased to Innovation Refunds.

**ANSWER:** SourceTek admits that individuals contracted through SourceTek to work for Innovation Refunds.  SourceTek denies the remaining allegations, as phrased, contained in Paragraph 64.

65.     These employees were either assigned to Innovation Refunds' headquarters in Des Moines, Iowa or were assigned work from or reported to Innovation Refunds' headquarters in Des Moines, Iowa.

**ANSWER:** SourceTek admits that any individuals contracted through SourceTek to work for Innovation Refunds were either assigned to Innovation Refunds' headquarters in Des Moines, Iowa or were assigned work from or reported to Innovation Refunds' headquarters in Des Moines, Iowa. SourceTek denies the remaining allegations contained in Paragraph 65.

66.     These employees directly reported to either "Sales Managers" or "Operations Managers" that were directly employed with Innovation Refunds and worked at Innovation Refunds' headquarters in Des Moines, Iowa.

**ANSWER:**  SourceTek admits that any individuals contracted through SourceTek to work for Innovation Refunds reported to individuals at Innovation Refunds.  SourceTek denies the remaining allegations contained in Paragraph 66.

67.     All approximately 300 of these employees' "single site of employment" is properly considered to be the headquarters in Des Moines.

**ANSWER:**  The allegations contained in Paragraph 67 contain legal conclusions to which a response is not required.   To the extent a response is deemed required, SourceTek denies the allegations for lack of information.

68.     On or about September 20, 2023, at least ninety percent (90%) of these employees were terminated effective immediately.

**ANSWER:** SourceTek is without knowledge or information sufficient to form a belief as to the allegations of Paragraph 68. The allegations of Paragraph 68 are therefore denied.

69.     These employees were not provided with any written notice of their termination.

**ANSWER:** SourceTek is without knowledge or information sufficient to form a belief as to the allegations of Paragraph 69. The allegations of Paragraph 69 are therefore denied.

70.     Plaintiff, Taveras, and all other employees who laid off within the ninety days prior to September 20, 2023, were not provided with sixty days' worth of advance notice.

**ANSWER:** SourceTek is without knowledge or information sufficient to form a belief as to the allegations of Paragraph 70. The allegations of Paragraph 70 are therefore denied.

71.     At all relevant times, SourceTek employed 100 or more employees, exclusive of part-time employees, (i.e., those employees who had worked few than 6 of the 12 months prior to the date notice was required to be given or who had worked fewer than an average of 20 hours per week during the 90 day period prior to the date notice was required to be given), or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States.

**ANSWER:** Denied.

72.     Thus, SourceTek is subject to the advance notice requirements as set forth in 29 U.S.C. § 2102.

**ANSWER:** The allegations contained in Paragraph 72 contain legal conclusions to which no response is required.  To the extent a response is required, SourceTek denies the allegations of Paragraph 72.

73.     As such, SourceTek's failure to provide the requisite sixty days' worth of notice amounts to a violation of the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "WARN Act").

**ANSWER:**  The allegations contained in Paragraph 73 contain legal conclusions to which no response is required.  To the extent a response is required, SourceTek denies the allegations of Paragraph 73.

<em>FLSA Allegations – Innovation Refunds</em>

74.     Innovation Refunds is a business enterprise that, upon information and belief, generated in excess of $1 billion in revenue during an approximate three-year period.

**ANSWER:**  SourceTek denies the allegations of Paragraph 74 for lack of information.

75.     Plaintiff, Lyons, and all other employees of Innovation Refunds frequently worked more than forty (40) hours per week.

**ANSWER:**  SourceTek denies the allegations of Paragraph 75 for lack of information.

76.     Innovation Refunds made at least two bonus payments to all its employees. One of which was for $25,000 and paid in approximately January of 2023. Another was for $10,000 and paid in approximately June of 2023.

**ANSWER:**  SourceTek denies the allegations of Paragraph 76 for lack of information.

77.     Each employee was entitled to the bonus so long as he or she was hired by a certain date, and the company met the milestone goals set by management at Innovation Refunds.

**ANSWER:**  SourceTek denies the allegations of Paragraph 77 for lack of information.

78.     These bonuses were labeled as "milestone" payments on each employee's paystub.

**ANSWER:**  SourceTek denies the allegations of Paragraph 78 for lack of information.

79.     These bonuses were promised to employees in order to induce the employees to close more deals and remain employed at Innovation Refunds.

**ANSWER:**  SourceTek denies the allegations of Paragraph 79 for lack of information.

80.     Moreover, these bonuses were used to entice employees to come and work for Innovation Refunds.

**ANSWER:**  SourceTek denies the allegations of Paragraph 80 for lack of information.

14

81.     From the time the bonus payments were announced through the date the second bonus payment was made, Plaintiff worked overtime hours every week.

**ANSWER:**  SourceTek denies the allegations of Paragraph 81 for lack of information.

82.     Because these bonuses were promised beforehand by Innovation Refunds management, were tied to company specific goals, were used to recruit employees and retain those who worked for Innovation refunds, the bonuses are nondiscretionary.

**ANSWER:**  SourceTek denies the allegations of Paragraph 82 for lack of information.

83.     Innovation Refunds paid Plaintiffs and all other employees overtime for their hours reported on their timesheets in excess of forty (40) per week. However, Innovation Refunds failed to include the employees' nondiscretionary, performance-based pay into its calculation of each employee's "regular rate of pay" – as mandated by 29 U.S.C. § 207(e).

**ANSWER:**  SourceTek denies the allegations of Paragraph 83 for lack of information.

84.     Once the milestone thresholds were met and the bonuses were paid, Innovation Refunds was required to apportion the bonuses over the workweeks of the period that the bonuses were earned.

**ANSWER:**  SourceTek denies the allegations of Paragraph 84 for lack of information.

85.     Innovation Refunds did not apportion the bonuses over the weeks they were earned, and thus, did not provide Plaintiff with the additional overtime compensation she is owed for those weeks the bonus was earned.

**ANSWER:**  SourceTek denies the allegations of Paragraph 85 for lack of information.

86.     Further, Plaintiff Lyons also earned commissions for closing a certain number of deals during a certain time period.

**ANSWER:**  SourceTek denies the allegations of Paragraph 86 for lack of information.

87.     Innovation Refunds implemented such a commission program to encourage its employees to close as many deals as possible.

**ANSWER:** SourceTek denies the allegations of Paragraph 87 for lack of information.

88.     Once each employee, including Lyons, met the requisite number of deals closed in the requisite time period, Innovation Refunds was obligated to pay each employee the commission due.

**ANSWER:** SourceTek denies the allegations of Paragraph 88 for lack of information.

89.     These payments were labeled as "commission" on each employee's paystub.

**ANSWER:** SourceTek denies the allegations of Paragraph 89 for lack of information.

90.     Innovation Refunds paid Plaintiff, Lyons, and all other employees overtime for their hours reported on their timesheets in excess of forty (40) per week. However, Innovation Refunds failed to include the employees' commission payments into its calculation of each employee's "regular rate of pay" – as mandated by 29 U.S.C. § 207(e).

**ANSWER:** SourceTek denies the allegations of Paragraph 91 for lack of information.

91.     By neglecting to include this amount of nondiscretionary, performance-based pay into each employee's "regular rate of pay," Innovation Refunds implemented a continuous and systematic process and procedure which deprived Plaintiff and all other non-exempt, hourly wage employees of the overtime they are due pursuant to 29 U.S.C. § 207.

**ANSWER:** SourceTek denies the allegations of Paragraph 91 for lack of information.

92.     Innovation Refunds knew that – or acted with reckless disregard as to whether – its refusal or failure to properly compensate Plaintiffs and the Collective Members for their overtime work would violate the FLSA, and Innovation Refunds was aware of the FLSA's overtime compensation requirements.

**ANSWER:** SourceTek denies the allegations of Paragraph 92 for lack of information.

*FLSA Allegations – SourceTek*

93.     SourceTek is a business enterprise that generates millions of dollars in revenue per year.

**ANSWER:** SourceTek denies the allegations of Paragraph 93.

16

94.     SourceTek provides staffing services for companies in multiple states and employs individuals who reside in multiple states.

**ANSWER:**  SourceTek denies the allegations of Paragraph 94.

95.     Plaintiff, Taveras, and all other employees of SourceTek were classified as non-exempt from overtime and paid on an hourly basis.

**ANSWER:**  SourceTek denies the allegations of Paragraph 95.

96.     Plaintiff, Taveras, and all other employees of SourceTek routinely worked in excess of forty (40) hours per week.

**ANSWER:**  SourceTek denies the allegations of Paragraph 96.

97.     When Plaintiff, Taveras, and the other employees of SourceTek were hired, they all underwent training that was jointly conducted by Innovation Refunds and SourceTek.

**ANSWER:**  SourceTek admits that any individuals contracted through SourceTek to work for Innovation Refunds attended a training program conducted by Innovation Refunds. SourceTek denies the remaining allegations contained in Paragraph 97.

98.     During this training, representative of Innovation Refunds and SourceTek told Plaintiff, Taveras, and the other employees of SourceTek that although they were hourly, Innovation Refunds would not pay for any hours in excess of forty (40).

**ANSWER:**  SourceTek denies the allegations of Paragraph 98.

99.     Thus, Plaintiff, Taveras, and the other employees of SourceTek were instructed to list forty (40) hours on their respective timesheets regardless of the hours actually worked.

**ANSWER:**  SourceTek denies the allegations of Paragraph 99.

100.    By instructing Plaintiff, Taveras, and the other employees of SourceTek to not list any hours more than forty (40) on their timesheets, SourceTek implemented a continuous and systematic process and procedure which deprived Plaintiff and all other non-exempt, hourly wage employees of the overtime they are due pursuant to 29 U.S.C. § 207.

**ANSWER:**  The allegations contained in Paragraph 100 contain legal conclusions to which no response is required.  To the extent a response is required, SourceTek denies the allegations of Paragraph 100.

101.    SourceTek knew that its refusal or failure to properly compensate Plaintiffs and the Collective Members for their overtime work would violate the FLSA, and SourceTek was aware of the FLSA's overtime compensation requirements.

**ANSWER:**  The allegations contained in Paragraph 101 contain legal conclusions to which no response is required.  To the extent a response is required, SourceTek denies the allegations of Paragraph 101.

### *"Single Employer" Allegations – Innovation Refunds*

102.    The WARN Act imposes liability for violations of its notice requirement on more than merely the entity that directly employed the employees who suffer an employment loss.

**ANSWER:**  The allegations contained in Paragraph 102 contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations contained in Paragraph 102.

103.    Here, Innovation Refunds should be considered a "single employer" with SourceTek because it (1) exerted significant control over the employees, including the decision to terminate all of them on or about September 20, 2023, (2) interjected itself into the payroll practices of SourceTek such that it created unity in their personnel policies, and (3) Innovation Refunds' operations depended upon the employees provided by SourceTek.

**ANSWER:**  The allegations in Paragraph 103 contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies for lack of information.

104.    All employees of SourceTek who suffered an employment loss on or about September 20, 2023, experienced said job loss as a direct consequence of Innovation Refunds' decision to terminate a large portion of its direct employees.

18

**ANSWER:** SourceTek admits that any individuals contracted through SourceTek to work for Innovation Refunds experienced job losses as a direct consequence of Innovation Refunds' decision to terminate a large portion of its direct employees. SourceTek denies the remaining allegations contained in Paragraph 104.

105.    After all, the "mass layoffs" that the employees of SourceTek fell victim to occurred on the same day as the "mass layoff" that occurred on or about September 20, 2023 to Innovation Refunds' direct employees.

**ANSWER:** SourceTek denies the allegations in Paragraph 105 for lack of information.

106.    Moreover, as mentioned previously, Innovation Refunds jointly administered the training program that all employees of SourceTek underwent.

**ANSWER:** SourceTek admits that any individuals contracted through SourceTek to work for Innovation Refunds attended a training program administered by Innovation Refunds. SourceTek denies the remaining allegations contained in Paragraph 106.

107.    During these trainings, representatives of Innovation Refunds told the SourceTek employees that they could work as many hours as they wanted to but there would be no overtime payment for those hours – despite the fact that the employees were designated as non-exempt from overtime requirements.

**ANSWER:** SourceTek denies the allegations in Paragraph 107 for lack of information.

108.    Innovation Refunds directive on the lack of overtime pay was probably due to its desire to keep the pay structure of the employees it directly employed similar with those individuals that it "leased" from the Staffing Agencies.

**ANSWER:** SourceTek denies the allegations in Paragraph 108 for lack of information.

109.    By way of example, Innovation Refunds deemed its "account executives" exempt from the FLSA's overtime wage requirement.

**ANSWER:** SourceTek denies the allegations in Paragraph 109 for lack of information.

110.    The "account executives" that worked for Innovation Refunds through the Staffing Agencies, however, were non-exempt from the FLSA's overtime wage requirement.

**ANSWER:**   SourceTek denies the allegations in Paragraph 110 for lack of information.

111.    Thus, if the "account executives" that worked Innovation Refunds through the Staffing Agencies were paid for the hours they worked in excess of forty (40) per week, the Staffing Agency "account executives" would be obtaining substantially more in compensation than those directly employed through Innovation Refunds.

**ANSWER:**   SourceTek denies the allegations in Paragraph 111 for lack of information.

112.    This discrepancy in pay is complicated by the fact that the overtime that was wrongfully withheld from the "account executives" is substantial.

**ANSWER:**   SourceTek denies the allegations in Paragraph 112 for lack of information.

113.    The "account executives" were routinely working fifty-five (55) or more hours in a week. Given their base hourly rate and the commissions they earned, the overtime they are owed could amount to one thousand dollars, or more, per week.

**ANSWER:**   SourceTek denies the allegations in Paragraph 113 for lack of information.

114.    This pay discrepancy would certainly create issues for Innovation Refunds' directly employed "account executives" who, after all, worked alongside and were managed subject to the same management team as the Staffing Agency "account executives."

**ANSWER:**   SourceTek denies the allegations in Paragraph 114 for lack of information.

115.    Further, Innovation Refunds' operations were dependent upon the "account executives," "client success champions," "processing specialists," and others supplies by the Staffing Agencies.

**ANSWER:**   SourceTek denies the allegations in Paragraph 115 for lack of information.

116.    Again, Innovation Refunds existed primarily for the purpose of convincing small business owners to hire Innovation Refunds to assist them in the filing for the Employee Retention Credit.

**ANSWER:**  SourceTek denies the allegations in Paragraph 116 for lack of information.

117.    "Account executives" were the persons responsible for calling on the leads that were generated through Innovation Refunds marketing efforts, verifying the potential client had the requisite number of employees on payroll, and then convincing the prospective client to hire Innovation Refunds.

**ANSWER:**  SourceTek denies the allegations in Paragraph 117 for lack of information.

118.    The "client success champions" or "processing specialists" were the persons responsible for ensuring the proper documentation was obtained from the prospective client and ensuring said documentation was passed along to the third-party law firms and accounting firms that Innovation Refunds contracted with to provide some sort of "eligibility" determination.

**ANSWER:**  SourceTek denies the allegations in Paragraph 118 for lack of information.

119.    To state succinctly, Innovation Refunds could not operate without "account executives," "client success champions," "processing specialists," and others that were supplied by the Staffing Agencies.

**ANSWER:**  SourceTek denies the allegations in Paragraph 119 for lack of information.

120.    Given the control exercised by Innovation Refunds over the employees supplied by SourceTek, the common personnel policies, and Innovation Refunds' dependency on SourceTek, the Defendants amount to a "single employer" for purposes of the WARN Act.

**ANSWER:**  The allegations contained in Paragraph 120 are legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations contained in Paragraph 120.

*"Joint Employer" Allegations – Innovation Refunds*

121.    Similar to the WARN Act, the FLSA imposes liability for violations on more than merely the entity that directly employed the employees who suffer an employment loss.

**ANSWER:**  The allegations contained in Paragraph 121 are directed to Innovative Refunds and contain legal conclusions to which no response is required.  To the extent a response is required, SourceTek denies the allegations for lack of information.

122.    Courts consider various factors to determine if the alleged "joint employer(s)" has operating control over the employees.

**ANSWER:**  The allegations contained in Paragraph 122 are directed to Innovative Refunds and contain legal conclusions to which no response is required.  To the extent a response is required, SourceTek denies the allegations for lack of information.

123.    Here, Innovation Refunds should be considered a "joint employer" with SourceTek because it (1) exerted significant control over the employees, including the decision to terminate all of them on or about September 20, 2023, (2) managed their day-to-day performance, and (3) determined the rate or method the employees were paid.

**ANSWER:**  The allegations contained in Paragraph 123 are directed to Innovative Refunds and contain legal conclusions to which no response is required.  To the extent a response is required, SourceTek denies the allegations for lack of information.

124.    Again, all employees of SourceTek who suffered an employment loss on or about September 20, 2023, experienced said job loss as a direct consequence of Innovation Refunds' decision to terminate a large portion of its direct employees.

**ANSWER:**  SourceTek admits that any individuals contracted through SourceTek to work for Innovation Refunds experienced job losses as a direct consequence of Innovation Refunds' decision to terminate a large portion of its direct employees. SourceTek denies the remaining allegations contained in Paragraph 124.

125.     The job losses incurred on or about September 20, 2023, by the employees of SourceTek were a product of Innovation Refunds' decision to terminate a large portion of its workforce.

**ANSWER:**  SourceTek admits that any individuals contracted through SourceTek to work for Innovation Refunds incurred job losses as a result of Innovation Refunds' decision to terminate a large portion of its workforce. SourceTek denies the remaining allegations contained in Paragraph 125.

126.     Innovation Refunds also directly supervised the employees supplied by SourceTek.

**ANSWER:**  SourceTek admits the allegations contained in Paragraph 126.

127.     Typically, the "account executives" supplied by SourceTek would report to a "sales manager" that was directly employed through Innovation Refunds.

**ANSWER:**  SourceTek denies the allegations in Paragraph 127 for lack of information.

128.     That "sales manager" would evaluate the performance of each "account executive" including, but not limited to, setting performance requirements and ensuring those requirements were met.

**ANSWER:**  SourceTek denies the allegations in Paragraph 128 for lack of information.

129.     Similarly, the "client success champions" or "processing specialists" supplied by SourceTek typically reported to a "operations manager" that was directly employed through Innovation Refunds.

**ANSWER:**  SourceTek denies the allegations in Paragraph 129 for lack of information.

130.     That "operations manager" would evaluate the performance of each "client success champions" or "processing specialists" including, but not limited to, setting performance requirements and ensuring those requirements were met.

**ANSWER:**  SourceTek denies the allegations in Paragraph 130 for lack of information.

131.    However, the interrelatedness between the employees supplied by the Staffing Agencies and those directly employed with Innovation Refunds became even more apparent at other times.

**ANSWER:** SourceTek denies the allegations in Paragraph 131 for lack of information.

132.    Innovations Refunds frequently employed "sales managers" and "operations managers" that were not directly employed with Innovation Refunds.

**ANSWER:** SourceTek denies the allegations in Paragraph 132 for lack of information.

133.    Often, these "sales managers" and "operations managers" were supplied by the Staffing Agencies, including SourceTek, yet supervised "account executives" and "client success champions" or "processing specialists" that were directly employed with Innovation Refunds.

**ANSWER:** SourceTek denies the allegations in Paragraph 133 for lack of information.

134.    Thus, there were numerous occasions where an Innovation Refunds direct hire would report to a manager that was supplied by one of the Staffing Agencies – such as SourceTek.

**ANSWER:** SourceTek denies the allegations in Paragraph 134 for lack of information.

135.    Moreover, there were also numerous occasions where an employee supplied by one of the Staffing Agencies would report to a "sales manager" or "operations manager" supplied by a different Staffing Agency. For example, an "account executive" directly employed with SourceTek might report to a "sales manager" who is directly employed with Recruitful.

**ANSWER:** SourceTek denies the allegations in Paragraph 135 for lack of information.

136.    In any event, all employees that were supplied by the Staffing Agencies were instructed to present themselves as employees of Innovation Refunds.

**ANSWER**: SourceTek denies the allegations in Paragraph 136 for lack of information.

137.    When an "account executive" supplied by SourceTek was communicating with a prospective client, that "account executive" was instructed to refer to him/herself as an Innovation Refunds employee.

24

**ANSWER:** SourceTek denies the allegations in Paragraph 137 for lack of information.

138.    The same is true with "client success champions" or "processing specialists." In any interaction they had with Innovation Refunds' clients, they were to hold themselves out as an Innovation Refunds employee – not as an employee of SourceTek, their direct employer.

**ANSWER:** SourceTek denies the allegations in Paragraph 138 for lack of information.

139.    The employees supplied by SourceTek had Innovation Refunds email addresses which contained the domain name "@innovationrefunds.com" and contained signature blocks which contained the Innovation Refunds logo.

**ANSWER:** SourceTek admits that any individuals contracted through SourceTek to work for Innovation Refunds had Innovation Refunds email addresses which contained the domain name "@innovationrefunds.com" and contained signature blocks which contained the Innovation Refunds logo. SourceTek denies the remaining allegations contained in Paragraph 139.

140.    Last, Innovation Refunds involvement in the Staffing Agencies' pattern or practice of withholding overtime pay to their employees exhibits Innovation Refunds' control over each employee's rate and method of pay.

**ANSWER:**  The allegations contained in Paragraph 140 contain legal conclusion to which no response is required.  To the extent a response is deemed required, SourceTek denies for lack of information.

141.    Even though the SourceTek's employees were not on Innovation Refunds' payroll, Innovation Refunds was, for all intents and purposes, their "employer."

**ANSWER:** The allegations contained in Paragraph 140 contain legal conclusion to which no response is required.  To the extent a response is deemed required, SourceTek denies for lack of information.

## CLASS ACTION ALLEGATIONS

142.     Plaintiffs, Lyons and Taveras, bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

**Nationwide Class**

All employees of Innovation Refunds and SourceTek who suffered an employment loss within the 90 days before September 20, 2023 and were not provided advance notice.

**ANSWER:**  The allegations contained in Paragraph 142 contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 142.

143.     Numerosity – Fed R. Civ. P. 23(a)(1). The Class contains hundreds of individuals, the joinder of which in one action would be impracticable. The exact number or identification of ascertainable and can be determined from the Defendants' records.

**ANSWER:**  The allegations contained in Paragraph 143 contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 143.

144.     Predominance of Common Questions - Fed R. Civ. P. 23(b)(3). The questions of law and fact common to the Class predominate over questions affecting only individual Class Members, and include, but are not limited to:

a.     Whether the Class Members were employees of the Defendants;

b.     Whether Defendant gave the requisite 60 days' advanced written notice;

c.     Whether Defendant can avail itself of any affirmative defenses;

d.     Whether the proposed class has enough members for this class action to proceed;

e.     Whether Defendant paid the Class Members 60 days' wages and benefits as required by the WARN Act; and

f.     Whether the Defendants amount to a "single employer."

26

**ANSWER:**  The allegations contained in Paragraph 144 contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 144.

145.    Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Individual questions, if any, are not prevalent in comparison to the common questions that dominate this action.

**ANSWER:**  The allegations contained in Paragraph 145 contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 145.

146.    Typicality – Fed R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct.

**ANSWER:**  The allegations contained in Paragraph 146 contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 146.

147.    Adequacy – Fed R. Civ. P. 23(a)(4); 23(g)(1). Plaintiffs will fairly and adequately represent and protect the interests of the Class, have no interest incompatible with the interests of the Class, and have retained counsel competent and experienced in such class action litigation.

**ANSWER:**  The allegations contained in Paragraph 147 contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 147.

148.    Superiority – Fed. R. Civ. P. 23(b)(3). This case is best suited as a class action because individual litigation of each Class Members' claims would be impracticable and unduly burdensome on the courts. Because of the size of each individual Class Members' claim, no Class Member could

afford to seek legal redress for the wrongs identified in the Complaint. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**ANSWER:**  The allegations contained in Paragraph 148 contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 148.

## COLLECTIVE ACTION ALLEGATIONS

### *Innovation Refunds Subclass*

149.    Plaintiff, Lyons, brings this action pursuant to the Fair Labor Standards Act 29 U.S.C. § 201 *et seq.* on his own behalf and as representative of individuals similarly situated who are former and current employees of Innovation Refunds.

**ANSWER:**  The allegations contained in Paragraph 149 are directed to Innovation Refunds and contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 149 for lack of information.

150.    Defendant Innovation Refunds subjected all of their hourly, nonexempt employees, including Plaintiff and the Collective Members, to their policy of failing to properly calculate and pay the employees' overtime wages.

**ANSWER:**  The allegations contained in Paragraph 150 are directed to Innovation Refunds and contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 150 for lack of information.

151.    At all relevant times, Plaintiffs and the Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Innovation Refunds' decision, policy, plan, and common program, practices, procedures, protocols, routines, and rules of failing to pay Plaintiffs and the Collective Members all overtime wages required by 29 U.S.C. § 207(a).

**ANSWER:**  The allegations contained in Paragraph 151 are directed to Innovation Refunds and contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 151 for lack of information.

152.     Plaintiffs' claims stated in this Complaint are essentially the same as those of the Collective Members. This action is properly maintained as a collective action because in all pertinent aspects the employment relationship of individuals similarly situated to Plaintiff is identical or substantially similar. Specifically, all non-exempt, hourly wage employees are entitled Refunds systematically failed to apportion the bonuses payments made to all hourly, non-exempt employees into their regular rate calculation – thereby depriving them of the overtime compensation they are due.

**ANSWER:**  The allegations contained in Paragraph 152 are directed to Innovation Refunds and contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 152 for lack of information.

153.     The Collective Members perform or have performed the same or similar work as Plaintiffs.

**ANSWER:**  The allegations contained in Paragraph 153 are directed to Innovation Refunds and contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 153 for lack of information.

154.     Innovation Refunds' failure to pay overtime compensation required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of Plaintiffs or the Collective Members.

**ANSWER:**  The allegations contained in Paragraph 154 are directed to Innovation Refunds and contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 154 for lack of information.

155.     Although the exact amount of damages may vary among the Collective Members, the damages for the Collective Members can be easily calculated by a simple formula. The claims of all

Collective Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Innovation Refunds that caused harm to all the Collective Members.

**ANSWER:**  The allegations contained in Paragraph 155 are directed to Innovation Refunds and contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 155 for lack of information.

156.    Innovation Refunds was aware or should have been aware that federal law prohibited them from not paying their employees all overtime wages as required by the FLSA.

**ANSWER:**  The allegations contained in Paragraph 156 are directed to Innovation Refunds and contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 156 for lack of information.

157.    Innovation Refunds' unlawful conduct has been widespread, repeated, and consistent.

**ANSWER:**  The allegations contained in Paragraph 157 are directed to Innovation Refunds and contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 157 for lack of information.

158.    This action is properly brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

**ANSWER:**  The allegations contained in Paragraph 158 are directed to Innovation Refunds and contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 158 for lack of information.

159.    Upon information and belief, the individuals similarly situated to Plaintiff contains more than one hundred (100) individuals. The exact number or identification of similarly situated employees is presently unknown. The identity and number of the employees is ascertainable and can be determined from Innovation Refunds' records.

**ANSWER:**  The allegations contained in Paragraph 159 are directed to Innovation Refunds and contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 159 for lack of information.

160.    Notice can be provided to the Collective Members by First Class Mail to the last address known to Innovation Refunds, via email at the last known email address known to Innovation Refunds, and by text message to the last known telephone number known to Innovation Refunds.

**ANSWER:**  The allegations contained in Paragraph 160 are directed to Innovation Refunds and contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 160 for lack of information.

*SourceTek Subclass*

161.    Plaintiff, Taveras, bring this action pursuant to the Fair Labor Standards Act 29 U.S.C. § 201 *et seq.* on his own behalf and as representative of individuals similarly situated who are former and current employees of SourceTek.

**ANSWER:**  The allegations contained in Paragraph 161 contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 161.

162.    Defendant SourceTek subjected all of their hourly, nonexempt employees, including Plaintiff and the Collective Members, to their policy of failing to properly calculate and pay the employees' overtime wages.

**ANSWER:**  The allegations contained in Paragraph 162 contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 162.

163.    At all relevant times, Plaintiff and the Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to SourceTek's decision, policy, plan, and common program, practices, procedures, protocols,

31

routines, and rules of failing to pay Plaintiff and the Collective Members all overtime wages required by 29 U.S.C. § 207(a).

**ANSWER:**  The allegations contained in Paragraph 163 contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 163.

164.    Plaintiff's claims stated in this Complaint are essentially the same as those of the Collective Members. This action is properly maintained as a collective action because in all pertinent aspects the employment relationship of individuals similarly situated to Plaintiff is identical or substantially similar. Specifically, all non-exempt, hourly wage employees are entitled to be paid overtime wages for all hours worked in excess of forty (40) in a given week. SourceTek, at the instruction of Innovation Refunds, instructed their hourly, non-exempt employees to only systematically deprived them of the overtime compensation they are due.

**ANSWER:**  The allegations contained in Paragraph 164 contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 164.

165.    The Collective Members perform or have performed the same or similar work as Plaintiffs.

**ANSWER:**  The allegations contained in Paragraph 165 contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 165.

166.    SourceTek's failure to pay overtime compensation required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of Plaintiffs or the Collective Members.

**ANSWER:**  The allegations contained in Paragraph 166 contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 166.

167.    The claims of all Collective Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by SourceTek that caused harm to all of the Collective Members.

**ANSWER:**  The allegations contained in Paragraph 167 contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 167.

168.    SourceTek was aware or should have been aware that federal law prohibited them from not paying their employees all overtime wages as required by the FLSA.

**ANSWER:**  The allegations contained in Paragraph 168 contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 168.

169.    SourceTek's unlawful conduct has been widespread, repeated, and consistent.

**ANSWER:**  SourceTek denies the allegations in Paragraph 169.

170.    This action is properly brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

**ANSWER:**  The allegations contained in Paragraph 170 contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 170.

171.    Upon information and belief, the individuals similarly situated to Plaintiffs contains more than one hundred (100) individuals. The exact number or identification of similarly situated employees is presently unknown. The identity and number of the employees is ascertainable and can be determined from SourceTek and Innovation Refunds' records.

**ANSWER:**  SourceTek denies the allegations in Paragraph 171 for lack of information.

172.    Notice can be provided to the Collective Members by First Class Mail to the last address known to the Defendants, via email at the last known email address known to the Defendants, and by text message to the last known telephone number known to the Defendants.

**ANSWER:**  SourceTek denies the allegations in Paragraph 172 for lack of information.

<strong>COUNT I – VIOLATION OF THE FEDERAL WARN ACT</strong>

173.    Plaintiffs, Lyons, and Taveras, by this reference, adopt and re-assert all allegations, averments, and statements of fact contained in the preceding paragraphs of this Complaint.

**ANSWER:**  SourceTek repleads and incorporates each preceding response of this Answer as though fully set forth herein.

174.    Plaintiff and other affected employees who have worked for Innovation Refunds and SourceTek are entitled to the rights, protections, and benefits provided under the federal WARN Act, 29 U.S.C. § 2101 et. seq.

**ANSWER:**  The allegations contained in Paragraph 174 are legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 174.

175.    Defendants are subject to the notice and back pay requirements of the federal WARN Act because the Defendants are a business enterprise that employed 100 or more employees, excluding part-time employees, and/or, employed 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of overtime), as defined in the WARN Act. 29 U.S.C. §§ 2101(1)(A) and(B).

**ANSWER:**  The allegations contained in Paragraph 175 are legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 175.

176.    Plaintiff, and all other similarly situated employees, were not provided any advance notice of their job losses.

**ANSWER:**  SourceTek denies the allegations contained in Paragraph 176.

177.    Defendants engaged in conducting a plant closing but have not provided affected employees with the required notice, in violation of the federal WARN Act.

**ANSWER:**  The allegations contained in Paragraph 177 contain legal conclusions to which a response is not required.  To the extent a response is deemed required, SourceTek denies the allegations contained in Paragraph 177.

## COUNT II – VIOLATION OF THE FAIR LABOR STANDARDS ACT – INNOVATION REFUNDS SUBCLASS

178.    Plaintiff, Lyons, by this reference, adopts and re-asserts all allegations, averments, and statements of fact contained in the preceding paragraphs of this Complaint.

**ANSWER:**  SourceTek repleads and incorporates each preceding response of this Answer as though fully set forth herein.

179.    By failing to include Plaintiff and all other hourly, nonexempt employees' nondiscretionary, performance-based pay into the calculation of each employee's "regular rate of pay," Innovation Refunds has failed to pay the required overtime compensation as mandated by 29 U.S.C. § 207.

**ANSWER:**  The allegations contained in Paragraph 179 are directed to Innovation Refunds and contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 179 for lack of information.

180.    Although at this stage, Plaintiff and the Collective Members are unable to state the exact amount owed for all overtime wages that have not been paid, Plaintiffs and the Collective Members believe that such information will become available during the course of discovery.

Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

**ANSWER:**  The allegations contained in Paragraph 180 are directed to Innovation Refunds and contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 180 for lack of information.

181.    Innovation Refunds knew that – or acted with reckless disregard as to whether – its refusal or failure to properly compensate Plaintiffs and the Collective Members for their overtime work would violate the FLSA.

**ANSWER:**  The allegations contained in Paragraph 181 are directed to Innovation Refunds and contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 181 for lack of information.

182.    Innovation Refunds was aware of the FLSA's overtime compensation requirements.

**ANSWER:**  The allegations contained in Paragraph 182 are directed to Innovation Refunds and contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 182 for lack of information.

183.    As such, Innovation Refunds' conduct constitutes a willful violation of the FLSA.

**ANSWER:**  The allegations contained in Paragraph 183 are directed to Innovation Refunds and contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 183 for lack of information.

184.    As a result of Innovation Refunds' failure or refusal to pay Plaintiffs and the Collective Members the overtime compensation deserved, Innovation Refunds violated 29 U.S.C. § 207(a). Plaintiffs and the Collective Members are therefore entitled to compensation of the overtime compensation shortfall to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**ANSWER:**  The allegations contained in Paragraph 184 are directed to Innovation Refunds and contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 184 for lack of information.

## COUNT III – VOLATION OF THE FAIR LABOR STANDARDS ACT – SOURCETEK SUBCLASS

185.    Plaintiffs, Taveras, by this reference, adopt and re-assert all allegations, averments, and statements of fact contained in the preceding paragraphs of this Complaint.

**ANSWER:**  SourceTek repleads and incorporates each preceding response of this Answer as though fully set forth herein.

186.    By instructing Plaintiff and all other hourly, nonexempt employees to not include all hours that were worked during each workweek, the Defendants have failed to pay the required overtime compensation as mandated by 29 U.S.C. § 207.

**ANSWER:**  The allegations contained in Paragraph 186 contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 186.

187.    Although at this stage, Plaintiff and the Collective Members are unable to state the exact amount owed for all overtime wages that have not been paid, Plaintiffs and the Collective believe that such information will become available during the course of discovery.  Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

**ANSWER:**  The allegations contained in Paragraph 187 contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 187.

188.     The Defendants knew that – or acted with reckless disregard as to whether – their refusal or failure to properly compensate Plaintiffs and the Collective Members for their overtime work would violate the FLSA.

**ANSWER:**  SourceTek deny the allegations contained in Paragraph 188.

189.     The Defendants were aware of the FLSA's overtime compensation requirements.

**ANSWER:**  The allegations contained in Paragraph 189 contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 189.

190.     As such, the Defendants' conduct constitutes a willful violation of the FLSA.

**ANSWER:**  The allegations contained in Paragraph 190 contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 190.

191.     As a result of the Defendants' failure or refusal to pay Plaintiffs and the Collective Members the overtime compensation deserved, the Defendants violated 29 U.S.C. § 207(a). Plaintiffs and the Collective Members are therefore entitled to compensation for the overtime compensation shortfall to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**ANSWER:**  The allegations contained in Paragraph 191 contain legal conclusions to which no response is required.  To the extent a response is deemed required, SourceTek denies the allegations in Paragraph 191.

### JURY TRIAL DEMAND

192.     Plaintiffs demand trial by jury on all counts.

**ANSWER:**  SourceTek acknowledges that Plaintiffs have demanded a trial by jury for all triable issues.  SourceTek denies that Plaintiffs are entitled to a jury trial.

## ADDITIONAL AND AFFIRMATIVE DEFENSES

SourceTek alleges and asserts the following defenses in response to the allegations of Plaintiffs' claims, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.  In addition to the defenses described below, SourceTek specifically reserves all rights to allege additional defenses not enumerated herein, including additional defenses that become known through the course of discovery:

1.      Plaintiffs' Amended Class and Collective Action Complaint fails to state a claim upon which relief may be granted.

2.      Plaintiffs' claims are barred, in whole or in part, because Plaintiffs' alleged injuries or damages were caused solely or proximately by the acts or omissions of others.

3.      Plaintiffs cannot meet the requirements for an award of enhanced damages or attorneys' fees.

4.      Plaintiffs' claims under the WARN Act are barred, in whole or in part, by the unforeseeable business circumstances exception.  Specifically, to the extent any mass layoff occurred, it was the result of business circumstances that were not reasonably foreseeable at the time that notice would otherwise be required to be provided under WARN.

5.      Plaintiffs claims under the WARN Act are barred, in whole or in part, because SourceTek is not an "employer" of some Plaintiffs.

6.      Any damages owed under the WARN Act are subject to reduction, in whole or in part, by (a) any wages paid by SourceTek to Plaintiffs for the period of the alleged violation; (b)voluntary and unconditional payment by SourceTek to a third party or trustee (such as premiums for health benefits or payments to a defined contribution pension plan) on behalf of attributable to Plaintiffs for the period of the alleged violation.

7.      Any damages owed under the WARN Act are subject to reduction, in whole or in part, because SourceTek acted in good faith and had reasonable grounds for believing that it never violated the WARN Act.

8.      Plaintiffs' claims under the FLSA are barred, in whole or in part, to the extent that Plaintiffs have submitted false and inaccurate time records.  In such situations, the claims would be barred by estoppel, unclean hands, waiver, and other doctrines.

9.      Plaintiffs' FLSA claims are barred, in whole or in part, because SourceTek lacked actual or constructive knowledge of uncompensated work time.

10.     Plaintiffs' FLSA claims are barred, in whole or in part, to the extent Plaintiffs seek compensation for activities that are non-compensable under the Portal-to-Portal Act.

11.     Plaintiffs' claims are barred in whole or in part, pursuant to the *de minimis* doctrine.

12.     SourceTek is entitled to a setoff, offset, and/or recoupment for any overpayments made to Plaintiffs.

13.     Plaintiffs' FLSA claims are barred, in whole or in part, and no liquidated damages are owed under the FLSA, because all decisions and actions of SourceTek were made in good faith.

14.     Plaintiffs' FLSA claims are barred, in whole or in part, to the extent that Plaintiffs seek damages beyond the applicable limitations period.  Relatedly, Plaintiffs cannot establish that any acts or omissions of SourceTek were willful under the FLSA.

15.     Plaintiffs' claims are barred, in whole or in part, pursuant by the doctrines of payment, accord, and satisfaction, and/or settlement and release.

16.     Plaintiffs do not meet applicable requirements to maintain their claims as a class action or a collective action.

17.     Plaintiffs' claims are barred, in whole or in part, by the doctrines of laches, waiver and/or estoppel.

18.     The claims of some Plaintiffs may be subject to mandatory arbitration.

WHEREFORE, Defendant SourceTek, Inc. respectfully requests the following relief:

A.   An order dismissing all claims against SourceTek and denying all relief requested by Plaintiffs, including monetary, equitable, and declaratory relief;

B.   An award of attorneys' fees to SourceTek for unreasonable and vexatious litigation under 28 U.S.C. § 1927;

C.   An award of SourceTek's costs and expenses; and

D.   All such other and further relief as the Court deems just and proper.


  */s/ Angel West*
Angel West (AT0008416)
Bryony Whitaker (AT0015158)
801 Grand Avenue, Suite 100
Des Moines, Iowa 50309
Telephone: (515) 686-8223
awest@maynardnexsen.com
bwhitaker@maynardnexsen.com

**ATTORNEYS FOR DEFENDANT
SOURCETEK, INC.**


<u>**CERTIFICATE OF SERVICE**</u>

I certify that on July 12, 2024, I electronically filed the foregoing with the Clerk of Court using CM/ECF. Notice of Electronic Filing will be sent by operation of CM/ECF to all counsel of record.

  */s/ Angel West*